68 P.(2d) 918

**SECURITY STATE BANK v. CLOVIS MILL.& ELEVATOR CO.**

No. 4172.

Supreme Court of New Mexico.

May 20, 1937.

342

Hatch, Grantham & Manson, of Clovis, for appellant.

James A. Hall, of Clovis, for appellee.

BRICE, Justice.

This suit was brought by appellee against the appellant to recover the value of grain alleged to have been converted to the use of appellant, and on which the appellee held a crop mortgage executed by one Hufstedler, from whom appellant purchased the grain.

The facts as found by the court are in substance as follows:

Prior to the 7th day of February, 1931, one Ed Hufstedler, who is now deceased, entered into a written contract to purchase from the owner 640 acres of land approximately 7 miles west and 3 miles north of Clovis, Curry county, N. M. The contract of purchase and deed therefor was not placed of record, but was delivered in escrow to a Clovis bank, and so held during all times material. The appellant had no actual knowledge of the existence of this contract and deed.

On February 7, 1931, Hufstedler executed to appellee a chattel mortgage on "all of the crops I may raise or cause to be raised during the year 1931, and being 300 acres on my place 10 miles northwest of Clovis, in Curry County, New Mexico, in corn, kaffir, higeria, cane, maize, sudan, etc." to secure notes aggregating the principal sum of $900 made by the mortgagor and payable to the mortgagee. This chattel mortgage was duly filed in the office of the county clerk of Curry county, N. M. on May 17, 1931, but appellant had no actual knowledge thereof.

At the time the notes and mortgage were executed and for some time prior thereto Hufstedler was residing on the farm mentioned, and continued to reside thereon during the crop year of 1931, and in that year raised a grain crop thereon. A part or all of this grain was sold by Hufstedler, which at the time of such sale was of the value of $1,031.22, to appellant. Hufstedler did not farm any other land during that year; nor was he at any time the record owner of any land in Curry county, N. M., nor did the records of Curry county indicate that at any time he held, owned, or had contracted to buy land in that county.

The court concluded that appellant had constructive notice of the chattel mortgage; that he converted grain of the value of $1,021.33 covered by the chattel mortgage to his own use; that he was liable to appellee in damages in that amount, for which the court entered its judgment.

The district court did not err in holding that appellant had constructive notice of the contents of the chattel mort-

gage mentioned. It was filed in the office of the county clerk, and by the terms of the statute gave constructive notice to all the world of its existence and contents. Sections 21-401; 21-102 (amended Laws 1935, c. 54, § 1); 21-104 (amended Laws 1935, c. 54, § 3); 118-108; and 118-109 of N.M.Sts.1929.

The description of the property mortgaged, while not as full as it might have been, was sufficient to put appellant on inquiry as to whether the grain offered for sale by the mortgagor was covered by this chattel mortgage. He was charged with the knowledge that Hufstedler had mortgaged to appellant a grain crop growing, or to be grown, on his farm 10 miles northwest of Clovis. With this knowledge the appellant, or any reasonably prudent person, would have made inquiry of Hufstedler upon his offering grain for sale, if it was of the kind covered by the mortgage in question. If the mortgagor had denied that it was mortgaged property, no prudent man would have bought the grain without further inquiry. The very nature of the crop calls for more careful inquiry on the part of purchasers than that of any other class of chattels. If the land had been described particularly by government subdivisions, the appellant would not have been in possession of any more substantial information than it constructively had. Grain has no brands or marks, nor is it capable of description. An inspection will not give the information of where it was grown. So the failure to particularly describe the land did not add to appellant's difficulty in determining the ownership of the grain. It was in the possession of Hufstedler; he had mortgaged grain grown on a farm that could have been easily located from the knowledge that it was about 10 miles northwest of Clovis and that Hufstedler lived and made a grain crop on it that year. Appellant made no search of the records or he would have discovered the chattel mortgage on file, and its contents alone would have been sufficient to have prevented any prudent man from purchasing the grain; and any reasonable inquiry would have led to the information that the grain was mortgaged.

Appellant cites Commercial State Bank v. Interstate Elevator Co., 14 S.D. 276, 85 N.W. 219, 86 Am.St.Rep. 760, a very similar case. The crop mortgaged in that case was described as:

"All the crops of every name, nature, and description, consisting of 340 acres of wheat, 15 acres flax, 10 acres oats; all the property now being in the possession of said first party in the county of ———— and county of Miner and state of South Dakota,"

The court, in holding the description insufficient, stated:

"This court has laid down the rule that 'a mortgage of personal property is sufficient, as to description, if it be such that a prudent, disinterested person, aided only and directed by such inquiry as the instrument itself suggests, is able to identify the property.' [Citing authorities.] The

rule above stated was adopted and applied in cases involving ordinary personal property, which can be easily identified, but has little application to grain, which can only be identified by the description of the particular real property upon which the the grain is to be raised. In a chattel mortgage, therefore, of growing grain, it is necessary that there should be a particular description of the land upon which the grain is to be grown."

That court fails to advise why a particular description of the land will identify grain grown on it after it is removed. It is as difficult to identify grain grown on lands particularly described as that not so described. Neither can be identified by inspection; but each requires the same character of inquiry. The land would be a little more difficult to locate in the latter case, but ordinarily an inquiry would result in the required information. The great weight of authority is opposed to this decision.

"In this connection, it is necessary to note the decision of the South Dakota supreme court to the effect that a mortgage of a growing crop is not valid unless it designates the range, section and township upon which the crop is growing. Such a rule not only departs from the established rule, but the additional description serves no useful purpose. Farms are known in common parlance by the name of the farmer occupying them, and not by the number of the township, range and section. A purchaser of grain, by making

inquiry, would learn the name of the man on whose land it was raised and, if he finds that the man has mortgaged his grain, he will be warned not to buy. It would be extremely unusual for the legal description of the land to be mentioned in the course of such inquiry.

"In general, a mortgage on crops must be sufficiently definite to enable strangers to find it, by the description itself, in conjunction with such investigations as a reasonably prudent person would be prompted thereby to make, to identify the property intended to be mortgaged. If the description meets this test, the record of the mortgage is constructive notice to such strangers." Jones on Chattel Mortgages (Bowers Ed.) § 55A.

 The rule is that a description in the mortgage which, aided by such inquiries as a reasonably prudent man would make under the circumstances and which the mortgage itself indicates, will lead a third person to the information, is sufficient. First National Bank of Bristow v. Rogers, 24 Okl. 357, 103 P. 582; Johnson v. Grissard, 51 Ark. 410, 11 S.W. 585, 3 L.R.A. 795. The description of the crop was not so indefinite as to invalidate the chattel mortgage.

 There is substantial evidence to support the court's finding of a conversion of the grain (Barnett v. Wedgewood, 28 N.M. 312, 211 P. 601), but only to the value of $1,001. The only evidence of value was the statement of an employee of the appellant, in charge of its books,

made to a representative of the appellee, that the books of the appellant company showed it had bought grain from Hufstedler of the value of $1,001 or "possibly a little more." Anderson (appellee's representative) was at the time making inquiries about this particular grain. He testified: "I asked him (appellant's employee) if he bought the grain from Ed Hufstedler, and he said he had. I said I would like to know how much. He looked at the books out there and showed me he bought $1001.00 worth, possibly a little more." Anderson testified that this conversation was in the month of April, 1932. He was asked: "Q. Do you remember when he bought it? A. In November, 1931, I remember being one of the dates. I don't recall the rest."

The evidence shows that Hufstedler farmed no other land during 1931. We think there was substantial evidence to prove that the grain in question was converted by the appellants and that it was of the value of $1,001. 23 C.J., title, Evidence, § 1802. The court erred in allowing judgment for more than that amount. A remittitur should be entered to the extent of the excess, which is $20.33.

After the parties had concluded the case, the court, not being satisfied with the evidence, ordered a further hearing before a referee, over appellant's objection. A hearing was had, and the parties appeared by their attorneys and other testimony was taken, and thereafter considered by the court in the final disposition of the cause. A point is made that the court erred in failing to render judgment for appellant after both sides had closed, and in appointing a referee to take further testimony on his own motion. The court did not abuse its discretion in ordering a reference on his own motion. The object of a trial is to do justice between the parties, and, if in the judgment of the court it is necessary to have further evidence to assist at arriving at a just decision, it is within his discretion to order it. Hohn v. Pauly, 11 Cal.App. 724, 106 P. 266.

Appellant contended, and introduced testimony tending to prove, that there was a custom in Curry county at the time the grain in question was bought, for purchasers dealing in grain to rely upon evidence furnished them by mortgagors as to the existence of mortgages on grain crops, so that grain dealers would be protected against buying mortgaged property. The custom, however, cannot prevail against a statute which requires purchasers of mortgaged property to take notice of such chattel mortgages when filed in the office of the county clerk. A custom will not prevail against a statute or the terms of a contract in conflict with it. Basey v. Gallagher, 20 Wall. 670, 22 L.Ed. 452; Higgins v. Cauhape, 33 N.M. 11, 261 P. 813; Romero v. Romero, 29 N.M. 667, 226 P. 652.

The case will be affirmed, with costs, upon condition that appellee shall enter in this court a remittitur of $20.33, with in-

terest on that amount; otherwise it will be reversed, with instructions to the district court to determine the market value of the grain converted by appellant and enter judgment in favor of appellee therefor.

It is so ordered.

HUDSPETH, C. J., and SADLER, and ZINN, JJ., concur.

BICKLEY, J., did not participate.