2005-NMCA-048

112 P.3d 270

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**STEPHEN F., Child–Appellant.**

**No. 24,007.**

Court of Appeals of New Mexico.

Feb. 21, 2005.

Certiorari Granted, No. 29,128,
April 26, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

FRY, Judge.

{1} Stephen F. (Child) appeals the trial court's finding that he is a delinquent juvenile and its judgment committing him to the custody of the Children, Youth and Families Department (CYFD) until the age of twenty-one. He requests a new trial, alleging that his jury trial was marred by evidentiary error and erroneous jury instructions. Alternatively, he argues the charges against him should be dismissed because his post-trial dispositional hearing occurred beyond the time limit provided in the Children's Court Rules. Because this claim of procedural error is dispositive, we need not address Child's other arguments.

{2} The nature of Child's offenses subjected him to youthful offender status, and the State sought the imposition of an adult sentence. Rule 10–101(A)(2)(b) NMRA provides that the Rules of Criminal Procedure govern youthful offender proceedings in the children's court under certain circumstances. However, we conclude that this rule governs only the adjudicatory phase of certain youthful offender proceedings, and that the Children's Court Rules govern the dispositional phase in all youthful offender proceedings. The trial court violated Rule 10–229(C) NMRA of the Children's Court Rules because it did not recommence Child's dispositional hearing within forty-five days of an order committing Child for diagnostic evaluation. Because we determine, as a matter of first impression, that this time limit is mandatory, we reverse and remand for the trial court to dismiss the claims with prejudice.

## BACKGROUND

{3} A jury found Child guilty of two counts of criminal sexual penetration. Because of his statutory status as a youthful offender, *see* NMSA 1978, § 32A–2–3(I) (2003), the trial court ordered that Child receive an amenability to treatment evaluation. *See* NMSA 1978, § 32A–2–20 (2003). Approximately two months after this order, the dispositional hearing on amenability to treatment had not yet occurred, and Child filed a motion to dismiss for failure to comply with the forty-five day time for dispositional hearings as set forth in Rule 10–229(C). The State countered that the time limit had not been reached, arguing that the trial court should instead apply the ninety-day time limit for sentencing found in the Rules of Criminal Procedure. The trial court ruled in favor of the State, and this appeal followed.

## DISCUSSION

### Applicability of Children's Court Rules or Rules of Criminal Procedure

{4} We begin our analysis with Rule 10–101 of the Children's Court Rules. The relevant portions of this rule provide as follows:

A. **Scope.** Except as specifically provided by these rules, the following rules of procedure shall govern proceedings under the Children's Code [32A–1–1 NMSA 1978]:

(1) the Children's Court Rules govern procedure in the children's courts of New Mexico in all matters involving children alleged by the state:

(a) to have committed a delinquent act as defined in the Delinquency Act;

. . . .

(2) the Rules of Criminal Procedure for the District Courts govern the procedure:

(a) in all proceedings in the district court in which a child is alleged to be a "serious youthful offender", as defined in the Children's Code [32A–1–1 NMSA 1978];

(b) in all proceedings in the Children's Court in which a notice of intent has been filed alleging the child is a "youthful offender", as that term is defined in the Children's Code [32A–1–1 NMSA 1978]. If the indictment or bind over order does not include a "youthful offender" offense, any further proceedings for the offense shall be governed by the Children's Court rules[.]

Rule 10–101(A)(1)–(2). Because the procedural issue in this case turns on interpretation of this rule and other rules of procedure, we apply de novo review. *See In re Daniel H.*, 2003–NMCA–063, ¶ 8, 133 N.M. 630, 68 P.3d 176.

{5} Child does not dispute that the State filed a notice of intent alleging that Child was a youthful offender, nor does he dispute that the bind over order included allegations that Child committed a "youthful offender" offense. These undisputed facts bring this case within Rule 10–101(A)(2)(b), which means, according to the plain language of this rule, that the Rules of Criminal Procedure apply to the proceedings. *See In re Michael L.*, 2002–NMCA–076, ¶ 9, 132 N.M. 479, 50 P.3d 574 ("We apply the same rules to the construction of Supreme Court rules of procedure as we apply to statutes."); *see also State v. Rivera*, 2004–NMSC–001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (explaining that courts must give effect to clear and unambiguous language in a statute). However, reading the Children's Code and the Children's Court Rules together, we conclude that the overall

scheme contemplates that, while the Rules of Criminal Procedure govern the adjudicatory proceedings in youthful offender cases like the present one, the Children's Court Rules govern all dispositional proceedings for all youthful offenders. *See Quantum Corp. v. State Taxation & Revenue Dep't*, 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (holding that statutes governing the same subject matter must be read in connection with one another).

{6} We first look to the statutory context. The proceedings against Child were governed by the Delinquency Act (the Act), NMSA 1978, §§ 32A–2–1 to –33 (1993, as amended through 2003), which is a chapter within the Children's Code. NMSA 1978, §§ 32A–1–1 to –21–7 (1993, as amended through 2003). The Act's purpose, in part, is to protect society and hold children accountable for their acts. § 32A–2–2. At the same time, the Act's stated purpose includes the goals of insulating children from adult consequences and providing rehabilitation. *Id.*

{7} Because Child's status as a youthful offender is critical, we next consider the definition of youthful offender within the statutory scheme. When a child commits a delinquent act, the adjudication procedures and the available sanctions depend on whether the law defines the child as (1) a delinquent offender, (2) a youthful offender, or (3) a serious youthful offender. *State v. Muniz*, 2003–NMSC–021, ¶ 6, 134 N.M. 152, 74 P.3d 86. With respect to the consequences after a determination of guilt, offenders in the first category, delinquent offenders, receive only juvenile sanctions. § 32A–2–3(C). Those in the second category, youthful offenders, may be subject to either juvenile or adult sanctions, § 32A–2–3(I); adult sanctions apply to youthful offenders only where the State follows statutory procedures for seeking an adult sentence, and where the trial court subsequently finds that the offender is not amenable to treatment as a child. § 32A–2–20. The third category, serious youthful offender, encompasses individuals who are fifteen to eighteen years of age at the time of an offense that results in charges of first degree murder. § 32A–2–3(H). The definition of serious youthful offender is clear:

from a legal perspective, these offenders are no longer considered children. *Id.; see also Muniz*, 2003–NMSC–021, ¶ 15, 134 N.M. 152, 74 P.3d 86 (holding that "the [l]egislature intended to treat children charged with first degree murder as adults").

{8} The legislature obviously intended to create three categories of juvenile offenders subject to varying degrees of accountability. With respect to the youthful offender category at issue here, the Act further divides this category into three subcategories. A youthful offender is a child who is "fourteen to eighteen years of age at the time of the offense," and who (1) is adjudicated for at least one of several specific offenses, or (2) has three prior felony adjudications within the past three years, or (3) has been adjudicated for first degree murder. § 32A–2–3(I). In the present case, Child's youthful offender status resulted from his adjudication for the offense of criminal sexual penetration. § 32A–2–3(I)(1)(h).

{9} Against this statutory backdrop, we now return to the Children's Court Rules. The Supreme Court apparently intended that application of the Children's Court Rules and Rules of Criminal Procedure in youthful offender cases turns on the nature of the offenses charged. Rule 10–101(A)(2)(b) provides that the Children's Court Rules govern proceedings involving youthful offenders "[i]f the indictment or bind over order does not include a 'youthful offender' offense[.]" The same rule provides that the Rules of Criminal Procedure govern proceedings involving all other youthful offenders. Referring back to the statutory definition of youthful offender, then, it is clear that the only youthful offenders who may be subject to proceedings governed by the Children's Court Rules are those who have three prior felony convictions within the past three years. The other two types of youthful offenders, defined by Subsections (1) and (3) of Section 32A–2–3(I), will, by definition, be subject to indictments or bind over orders alleging youthful offender offenses, and thus, their proceedings will be governed by the Rules of Criminal Procedure.

{10} Having said this, there is nevertheless a compelling argument that these subca-

tegories of youthful offender proceedings—those governed by the Children's Court Rules, and those governed by the Rules of Criminal Procedure—apply only to the adjudicatory stage of the proceedings. No matter what kind of Rule 10–101(A)(2)(b) youthful offender category a child falls under, that child is entitled to a dispositional hearing to determine whether he or she will be subject to juvenile sanctions or an adult sentence. § 32A–2–20(A) ("The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender."); *Muniz*, 2003–NMSC–021, ¶ 6, 134 N.M. 152, 74 P.3d 86 (noting that in all youthful offender proceedings, "the children's court must determine whether the child is amenable to treatment or rehabilitation as a child in available facilities") (internal quotation marks and citation omitted); *cf. State v. Michael S.*, 1998–NMCA–041, ¶ 11, 124 N.M. 732, 955 P.2d 201 (noting that a child who agrees in a plea and disposition agreement that he could be sentenced as an adult has waived his right to a dispositional hearing). A youthful offender cannot be sentenced as an adult unless the children's court makes specific findings that the child "is not amenable to treatment or rehabilitation as a child in available facilities" and that "the child is not eligible for commitment to an institution for the developmentally disabled or mentally disordered." § 32A–2–20(B)(1)–(2). Consequently, because the Rules of Criminal Procedure do not provide for such a dispositional hearing, it would make sense that when the adjudicatory stage has been completed, the next stage of the proceedings should fall under the purview of the Children's Court Rules. Then, if the child is found not to be amenable to treatment as a child, the sentencing procedures in the Rules of Criminal Procedure would be triggered once again. Therefore, we conclude that once a child is adjudicated a youthful offender, the Children's Court Rules governing dispositional proceedings, not the Rules of Criminal Procedure, should apply in all cases.

{11} The State argues that the ninety-day sentencing time limit in Rule 5–701(B) NMRA of the Rules of Criminal Procedure applies instead of the forty-five day dispositional hearing time limit in Rule 10–229(C) of the Children's Court Rules. To the extent that the State relies on *State v. Todisco*, 2000–NMCA–064, ¶ 31, 129 N.M. 310, 6 P.3d 1032 for this proposition, we are not persuaded. In *Todisco*, we considered a case where the trial court did not resume the continuation of a dispositional hearing for more than nine months after this Court clarified the factors to be considered in determining amenability to treatment, and where the defendant, who was ultimately found not amenable to treatment, argued that the delay violated the six-month rule governing the time to begin trial. *Id.* ¶¶ 6–8, 31–35. The defendant's argument failed because the six-month rule for the commencement of trial does not apply to sentencing. *Id.* ¶ 34. Although *Todisco* suggests that Rule 5–701(B) on sentencing might apply to a dispositional hearing, the opinion explicitly refrains from deciding that issue. *Id.* ¶ 35. In addition, the opinion responds to arguments very different from those that we address today. *See State v. Erickson K.*, 2002–NMCA–058, ¶ 20, 132 N.M. 258, 46 P.3d 1258 (stating that cases are not authority for matters not decided).

### Rule 10–229(C) Commitment for Diagnosis

{12} Having concluded that the Children's Court Rules apply in this case, we now turn to Rule 10–229(C), which specifically provides that where the court orders diagnostic commitment under the Children's Code, dispositional proceedings "shall be recommenced within forty-five (45) days after the filing of the court's order." We first observe that the rule refers to the *re* commencement of dispositional proceedings. A review of the Children's Code convinces us that the proceedings at issue in the present case fit within the language of the rule.

{13} The Code provides that "[T]he court may proceed immediately or at a *postponed hearing* to make disposition of the case." NMSA 1978, § 32A–2–16(F) (1993) (emphasis added). Here, immediately upon the discharge of the jury following the adjudicatory stage, the trial court began proceedings of a dispositional nature. The court asked counsel for their positions on obtaining a diagnos-

tic evaluation. Counsel concurred that such an evaluation was desirable, and the trial court stated that it would enter an order regarding the evaluation. When the trial court filed its written order on October 22, 2002 directing that Child be committed for a diagnostic evaluation, the time limit for recommencement of the dispositional hearing was triggered.

{14} We next observe that the language of Rule 229(C) regarding the time limits for recommencing the proceedings is unequivocal and mandatory. *See State v. Davis,* 2003–NMSC–022, ¶ 7, 134 N.M. 172, 74 P.3d 1064 (stating that the word "shall" is mandatory language). Here, the trial court ordered a diagnostic commitment on October 22, 2002. Under Rule 10–229(C), therefore, the deadline for recommencement of the dispositional hearing was December 6, 2002. The rule provides that for good cause shown, the Supreme Court may grant an extension of this time limit. Rule 10–229(D). In this case, however, the State made no such request. Thus, the hearing held on February 21, 2003, was well past the time limit of the rule.

{15} Because the dispositional hearing was held past the mandatory time limit in Rule 10–229(C), we must determine the proper remedy. The State argues that dismissal would be improper and points to Rule 10–117 NMRA, which states that "failure to comply with time limits is not grounds for … dismissing an action, unless refusal to take any such action appears to the court inconsistent with substantial justice or unless these rules expressly provide otherwise." However, it is significant to us that the mechanism for obtaining an extension of the Rule 10–229 time limit is to request one from the Supreme Court by showing good cause. Rule 10–229(D). This suggests a valid parallel with the six-month rule, Rule 5–604 NMRA, and with the provisions for extending the time limits applicable to the commencement of adjudicatory hearings governed by the Children's Court Rules. *See* Rule 10–226(E) NMRA (limiting the time for commencement of an adjudicatory hearing in a delinquency proceeding); Rule 10–320(C)(2) NMRA (limiting the time for commencement of an adjudicatory hearing in an abuse and neglect proceeding). Rule 5–604(D), Rule 10–226(E), and Rule 320(C)(2) all provide that time extensions, past the limited extensions the trial courts may grant, may only be obtained from the Supreme Court for good cause shown. In fact, as we discuss below, the wording of Rule 10–229(D) is virtually identical to the wording of Rule 5–604(D) and (E), Rule 10–226(E), and Rule 10–320(C)(2).

{16} Rule 10–229(D) provides:

**D. Extension of time.** For good cause shown the time for commencing a disposition hearing may be extended by the Supreme Court, a justice thereof, or a judge designated by the Supreme Court. The party seeking an extension of time shall file with the clerk of the Supreme Court a verified petition for extension concisely stating the facts petitioner deems to constitute good cause for an extension of time to commence the dispositional hearing. The petition shall be filed within the applicable time limits prescribed by this rule, except that it may be filed within ten (10) days after the expiration of the applicable time limits if it is based on exceptional circumstances beyond the control of the state or children's court which justify the failure to file the petition within the applicable time limit. A party seeking an extension of time shall forthwith serve a copy thereof on opposing counsel. Within five (5) days after service of the motion, opposing counsel may file an objection to the extension setting forth the reasons for such objection. No hearing shall be held except upon order of the Supreme Court. If the Supreme Court finds that there is good cause for the granting of an extension beyond the applicable time limit, it shall fix the time limit within which the dispositional hearing must be commenced.

Similarly, Rule 5–604(D) provides that "[f]or good cause shown, the time for commencement of trial may be extended by the Supreme Court or a justice thereof[,]" and Rule 10–226(E) provides that "[f]or good cause shown, the time for commencement of an adjudicatory hearing [in a delinquency proceeding] may be extended by the Supreme Court, a justice thereof, or a judge designated by the Supreme Court." Rule 10–

320(C)(2) states that the time for commencing an adjudicatory hearing in an abuse and neglect case may be extended by the "Supreme Court, a justice thereof, or a judge designated by the Supreme Court for good cause shown." In addition, Rule 5–604(E), Rule 10–226(E), and Rule 10–320(C)(2) have provisions virtually identical to Rule 10–229(D)'s provisions relating to the procedure for seeking an extension of time from the Supreme Court.

{17} Despite these notable similarities, Rule 5–604, Rule 10–226, and Rule 10–320 each has an additional provision that Rule 10–229 does not have. Rules 5–604(F), 10–226(F), and 10–320(D) all provide that noncompliance with the time limits of those rules or with the time limits of any extensions granted shall result in dismissal with prejudice of the charges against the accused. Rule 10–229 has no such provision. We find this fact puzzling. If time limits, in whatever context, are deemed so important that only the Supreme Court may extend them beyond a certain point, then it would seem logical that noncompliance with those time limits should have the same result in every context.

{18} In an attempt to understand this apparent inconsistency, we have reviewed the history of Rule 10–229. *See Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996) ("In interpreting statutes, we seek to give effect to the [l]egislature's intent, and in determining intent we look to the language used and consider the statute's history and background."). Before the 1997 amendment, the rule provided that for a child in detention, dispositional proceedings "shall begin within twenty (20) days from the date the adjudicatory hearing was concluded or an admission of the factual allegations of the petition was accepted by the court[.]" Rule 10–229(B) NMRA 1996. It went on to state that a child could be transferred to a department of corrections facility for diagnosis and education, but for no more than sixty or ninety days, depending on the specifics of the child's adjudication. *Id.* If a child was so transferred, "the dispositional hearing shall begin within twenty (20) days from the date the court receives the diagnostic report of the department." *Id.* The rule concluded:

If the hearing is not begun within the times specified in this paragraph, the petition shall be dismissed with prejudice after notice and hearing if:

(1) the child has not agreed to the delay or has not been responsible for the failure to comply with the time limits; and

(2) the child has been prejudiced by the delay.

Rule 10–229(B)(1)–(2). Thus, failure to comply with the rule's time limits resulted in dismissal, but only if the child played no part in the delay and was prejudiced by the delay.

{19} Following the 1997 amendment, the current version of Rule 10–229 is quite different. With respect to a child in detention, the current rule provides for more time—thirty days rather than twenty days—for a dispositional hearing to commence following the adjudicatory proceedings. Rule 10–229(B). If the hearing is not begun within this time, "unless the child has agreed to the delay or has been responsible for the failure to comply with the time limits, the child shall be released from detention on such conditions as appropriate until the dispositional hearing can be commenced." *Id.* Thus, the exception for child-caused delay that was in the prior version of the rule was incorporated into the current version, but only with respect to a child in detention. In addition, failure to comply with the time limit for a child in detention results in release of the child in the current version, rather than dismissal as provided in the prior version of the rule.

{20} The 1997 amendment also created a new paragraph devoted to the situation, like the one in the present case, where a child is committed for diagnosis. New paragraph (C) provides that the court may commit a child "to a facility for purposes of diagnosis and recommendations to the court as to what disposition is in the best interests of the child and the public." Rule 10–229(C). If the court orders such a commitment, "the dispositional proceedings shall be recommenced within forty-five (45) days after the filing of the court's order." *Id.* Thus, the 1997 amendment considerably shortened the time permitted for diagnostic commitment. Under the prior version of the rule, a child could be committed to a facility for as long as

ninety days, and the twenty-day time limit for commencement of the dispositional hearing was not triggered until the court received the diagnostic report. The current version of the rule requires commitment, diagnosis, and report to be completed within forty-five days of the court's order of commitment. We can only conclude from this that the Supreme Court believed it was critical to strictly limit the amount of time a child could be committed for diagnosis.

{21} The 1997 amendment's reduction of the time limit to forty-five days also brought the rule into compliance with the Children's Code, which provides that a "court may order that a child adjudicated as a delinquent child be transferred ... for a period of not more than fifteen days within a three hundred sixty-five day time period for purposes of diagnosis[.]" NMSA 1978, § 32A-2-17(D) (1995). Thus, it appears that the Supreme Court settled on a forty-five-day time limit applicable to children committed for diagnosis by adding the fifteen days permitted by Section 32A-2-17(D) to the thirty days adopted in Rule 1-229(B) for the commencement of dispositional hearings for children in detention.

{22} The 1997 amendment also added the paragraph with which we are now confronted: the paragraph providing that "[f]or good cause shown the time for commencing a disposition hearing may be extended by the Supreme Court, a justice thereof, or a judge designated by the Supreme Court." Rule 10-229(D). Significantly, the addition of this paragraph manifests a heightened emphasis on the importance of the time limits, as compared to the pre–1997 version. Yet, paradoxically, even though the prior version provided for dismissal of the petition in the event of noncompliance with the time limits under certain circumstances, the current version makes no provision dictating the consequences for noncompliance with the new, more stringent time limits.

{23} Considering the current and prior versions of the rule and comparing the rule's provision for Supreme Court extensions of time with virtually identical provisions in Rules 10-226, 10-320, and 5-604, we conclude that the appropriate remedy for noncompli-

ance with Rule 10-229(C)'s time limit is dismissal. *See Quantum Corp.*, 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (explaining that a statute whose construction is in question is to "be read in connection with other statutes concerning the same subject matter"). The Supreme Court clearly provided for dismissal in the pre–1997 version of Rule 10-229 and inexplicably did not make a similar provision in the amended version, even though it enhanced the stringency of the time limits applicable to children committed for diagnosis. We surmise that when the Supreme Court added the provision permitting only the Supreme Court to grant an extension for good cause, it also intended to add a paragraph stating the consequences for noncompliance with the time limit, similar to Rule 10-226(F) and Rule 5-604(F). The absence of such a provision was likely an oversight. We note as an aside that the committee commentary to Rule 10-229 sheds no light on our inquiry because it was not changed in any way after the 1997 amendment significantly changed the rule.

{24} We observe that while the 1997 amendment shortened the time limit for diagnostic commitment, it lengthened the time limit for children in detention and also provided that a child in detention must be released "[i]f the hearing is not begun within the time specified[.]" Rule 10-229(B). Although this appears at first blush to be a less stringent consequence than the dismissal required by the pre–1997 version, we think the current version of Rule 10-229(D) permits the State to ask the Supreme Court for an extension of the thirty-day limit on detention; if the hearing does not begin within the extended time frame, then the consequence—dismissal—would be the same as the consequence for failure to comply with the forty-five day limit or any Supreme Court extensions on diagnostic commitment.

{25} We acknowledge that Rule 10-117 provides that "failure to comply with time limits is not grounds ... for dismissing an action ... unless these rules expressly provide otherwise" and is clearly intended to be the default rule. The newer version of Rule 10-229 on dispositional hearings has no such express provision for failure to comply with

the new deadlines. It is not the role of this Court to re-write the rules or to freely insert our view of the proper or ideal language. It is only after careful review of the overall scheme of similar rules and the increasingly strict revisions made over time to Rule 10–229 that we conclude the dismissal clause is not only conspicuously absent, but unreasonably absent. Typically, the removal of an exception clause would indicate that the rule's drafters intended for the default rule to apply. However, the stark inconsistency with similar rules, the new time extension via only the Supreme Court (compared to rules that allow lower court extensions), and the drastic change from the prior rule without any clarification convince us that the omission of the dismissal clause creates results that are not only different from the old rule, but that are unreasonable if literally applied. *See Rivera,* 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (explaining that courts have not relied on the literal meaning of statutes "when such an application would be absurd, unreasonable, or otherwise inappropriate"). *See also State v. Doe,* 93 N.M. 31, 33–34, 595 P.2d 1221, 1223–24 (Ct.App.1979) (holding that dismissal was the appropriate remedy for violation of the time limits applicable to dispositional delinquency hearings under a prior version of the relevant rule in order "to insure prompt handling of children's court matters").

{26} In summary, despite the absence of an express provision requiring dismissal for noncompliance with the Rule 10–229(C) time limit, we hold dismissal is proper. Because the dispositional hearing in this case commenced more than forty-five days after the trial court's order committing Child for diagnosis, the charges against Child must be dismissed.

## CONCLUSION

{27} For the foregoing reasons, we reverse the trial court's judgment and remand with instructions to the trial court to dismiss the charges against Child.

{28} **IT IS SO ORDERED.**

I CONCUR: MICHAEL E. VIGIL, Judge.

CELIA FOY CASTILLO, Judge (concurring in part and dissenting in part).

CASTILLO, Judge (dissenting).

{29} I respectfully dissent. While I agree that Rule 10–229 of the Children's Court Rules is the correct rule to use for the dispositional portion of this case, I do not agree that automatic dismissal is the sanction to be imposed when a dispositional hearing is not recommenced within forty-five days from entry of the order committing a child to a facility for diagnostic purposes.

{30} The majority relies on two bases for their holding that dismissal is the proper sanction. First, they look to the history of the rule; second, they interpret the language of the rule as necessarily including the dismissal provision that is contained in Rules 5–604, 10–226, and 10–320. My view is different. I believe there is a distinction between not meeting the time requirements for the dispositional portion of the case and not meeting those for the adjudicatory portion. Over the years, our Supreme Court has refined how a court is to remedy the late commencement of a dispositional hearing, and the requirement of automatic dismissal with prejudice has been eliminated. Other bases for dismissal remain. Consequently, the absence of an express automatic dismissal provision is intentional, and we would be rewriting the rule if we included it through statutory construction.

## HISTORY

{31} The Children's Court Rules were first enacted in 1976. Since then, there have been numerous changes, including a renumbering and a recompilation. Two rules are applicable in this case: Rule 10–229, which deals with time limits for dispositional proceedings, and Rule 10–117, which deals with the consequences of not meeting the time requirements set out in the rules.

### Rule 10–229

{32} In *State v. Doe,* 93 N.M. 31, 595 P.2d 1221 (Ct.App.1979), our court first dealt with what is today Rule 10–229(B). At that time, it was designated as Rule 49(b), N.M.R. Child. Ct. (Repl.Pamp.1979), and stated as follows:

(b) **Time limits.** When the respondent is in detention, the dispositional hearing shall begin within twenty days from the date the adjudicatory hearing was concluded or an admission of the factual allegations of the petition was accepted by the court, except as provided herein. The court may order that the respondent be transferred to an appropriate facility of the department of corrections ... for a period of not more than sixty days for purposes of diagnosis. If the respondent is so transferred, the dispositional hearing shall begin within seventy-five days from the date the adjudicatory hearing was concluded or an admission of the factual allegations of the petition was accepted by the court.

*Id.; Doe,* 93 N.M. at 32, 595 P.2d at 1222. This rule established the time limits for commencement of a dispositional hearing (1) when a child was in detention and (2) when the child had been transferred to an appropriate facility for purposes of diagnosis. It was silent regarding the sanction for exceeding the time requirements. In holding that the consequence for violation of this rule was automatic dismissal, this court rejected the argument that a child should have to demonstrate prejudice before dismissal could be imposed. *Doe,* 93 N.M. at 33–34, 595 P.2d at 1223–24.

{33} We again considered Rule 49(b), N.M.R. Child. Ct. (Repl.Pamp.1979), in *State v. Doe,* 94 N.M. 282, 609 P.2d 729 (Ct.App.1980). We again upheld dismissal, this time rejecting the state's argument that the child's own actions in delaying the hearing acted as a waiver against the strict application of the time limits. *Id.* at 284, 609 P.2d at 731.

{34} In 1982, the rule was amended to read as follows:

(b) **Time limits.** When the [child] is in detention, the dispositional hearing shall begin within twenty days from the date the adjudicatory hearing was concluded or an admission of the factual allegations of the petition was accepted by the court, except as provided herein. The court may order that the [child] be transferred to an appropriate facility of the department of corrections for a period of not more than sixty days with respect to a child adjudicated as a child in need of supervision and for a period of not more than ninety days with respect to a child adjudicated as a delinquent for purposes of diagnosis and education. If the [child] is so transferred, the dispositional hearing shall begin within twenty days from the date the court receives the diagnostic report of the department. If the hearing is not begun within the times specified in this paragraph, the petition shall be dismissed with prejudice after notice and hearing if:

(1) the child has not agreed to the delay or has not been responsible for the failure to comply with the time limits; and

(2) the child has been prejudiced by the delay.

Rule 49(b), N.M.R. Child. Ct. (Repl. Pamp.1982). There are three major changes. First, the consequence of failure to meet time deadlines is express—dismissal with prejudice. Second, dismissal is no longer automatic but occurs if the child has not agreed to or been responsible for the delay *and* if prejudice is shown as a result of delay in the dispositional hearing. Third, commencement of the dispositional hearing for a child having been transferred for diagnostic purposes is no longer calculated from the date of the adjudicatory hearing, but rather from the date the diagnostic report is received. In the new language, the Supreme Court fashioned a rule that would take into consideration the reason for delay and prejudice, two factors that had been expressly rejected in interpreting the former rule. *Doe,* 94 N.M. at 284, 609 P.2d at 731; *Doe,* 93 N.M. at 33–34, 595 P.2d at 1223–24 (the *Doe* cases). The limitation for time spent in a diagnostic facility was treated separately from the time requirement for beginning the dispositional hearing.

{35} In 1986, the Supreme Court recompiled the rules, and Rule 49, N.M.R. Child. Ct. (Repl.Pamp.1982), became Rule 10–229 NMRA 1986. The form of the rule we are considering today was amended effective April 1, 1997, and, as observed by the majority, appears to have no updated Committee Commentary. Majority opinion ¶ 22. The majority recognizes the substantial changes

made to all of Rule 10–229 by the 1997 amendments. *Id.* ¶¶ 16–20.

{36} The 1997 amendments were based in part on the 1993 rewrite. of the Children's Code, wherein the categories of youthful offenders and serious youthful offenders were established. *See Michael S.*, 1998–NMCA–041, ¶ 3, 124 N.M. 732, 955 P.2d 201. Rule 10–229(B) NMRA 1997 specifically refers to trials in youthful offender proceedings. This section also establishes time limits for the commencement of dispositional "proceedings," and the entire rule is retitled "Dispositional proceedings." The prior version of the rule used the more limited term of "hearing" in the title and in the text of the rule. Rule 10–229 NMRA 1986. The current rule further relaxes the consequence for failure to begin the dispositional hearing (in this part of the rule, "hearing" is used) of a child in detention. Rule 10–229(B). The remedy is no longer dismissal, but rather release "on such conditions as appropriate until the dispositional hearing can be commenced." *Id.*

{37} The 1986 version of the rule calculated time limits from the conclusion of the adjudicatory hearing, from the date that the court accepts an admission of the petition allegations, or from receipt by the court of the diagnostic report. Rule 10–229(B) NMRA 1986. The period of time spent by a child in a diagnostic facility was limited to sixty or ninety days, depending on the adjudication. *Id.* The current version of the rule includes an entirely new subsection dealing with diagnostic commitment; this topic is no longer contained in the subsection dealing with time limits for commencement of dispositional proceedings. Rule 10–229(C). The language of Rule 10–229(C) allows the court to enter an order committing a child to a facility for diagnostic purposes and directs that the dispositional proceedings "shall be recommenced" within forty-five days after the filing of the court's order. *Id.* The majority concludes that the Supreme Court, believing that it was critical to limit commitment time, intended to impose automatic dismissal as the remedy for violating the time requirements regarding commitment. Majority opinion ¶¶ 19, 22. While I agree that the time for commitment has been re-

duced, I do not agree this indicates that the remedy should be automatic dismissal. I will begin with the language of the statute. The operable words in this subsection are "shall" and "recommenced." I will address them in reverse order.

{38} The word "recommence" means to commence or begin again. Webster's Third New International Dictionary 1897 (3d ed.1976). Thus the use of the word "recommence" indicates that dispositional proceedings have already commenced. As observed by the majority, the trial court began the dispositional proceedings immediately after the adjudication. Majority opinion ¶ 13. Rule 10–229(B) indicates that once begun, the "dispositional proceedings shall be concluded as soon as practical[,]" thereby supporting the conclusion that once commenced, reasonable time is allowed for the conclusion of proceedings.

{39} I agree with the majority that the word "shall" is mandatory. I agree that the dispositional proceedings in this case should have been recommenced within forty-five days from the filing of the court's order of commitment. I also agree with the majority that the key question relates to the consequences of missing the deadline. The majority points to Rule 10–229(D), which sets out the procedure for obtaining an extension for "commencing a disposition hearing," and concludes that this section refers to recommencement of dispositional proceedings after commitment. I disagree. By its very language, Rule 10–229(D) refers to commencement, not recommencement, and to proceedings, not hearings. Consequently, extensions for recommencing dispositional proceedings would be governed by the general rule for time extension. Rule 10–106(B)(2) NMRA. In this case, no motion was made, as required by this rule, because it appears that the court determined that the ninety-day period set forth in the Criminal Rules of Procedure applied. So we are left with a failure to comply with a deadline imposed by the rules, which is the subject of Rule 10–117.

**Rule 10–117**

{40} Following the *Doe* cases, the Children's Court Rules have been amended to

refine the consequences of missing the deadline for beginning dispositional hearings, as I have explained above. Effective in February 1982, the Supreme Court amended what is today Rule 10–117 to deal with those cases wherein the Children's Court Rules are silent with regard to the sanction to be imposed when deadlines are missed. Rule 17, N.M.R. Child. Ct. (Repl.Pamp.1982). The pertinent language of Rule 10–117 states that "[e]rror or defect in any ruling, ... including failure to comply with time limits[,] is not grounds for ... dismissing an action, unless ... these rules expressly provide otherwise." Rule 10–117.

{41} The Committee Commentary on Rule 10–117 indicates that the purpose of the amendment was to "clarify that failure to comply with time limits is not grounds for dismissal of an action unless expressly provided otherwise by the rules." *Id.* Although the Commentary lists Rules 10–226, 10–229, and 10–308 NMRA as specifically requiring dismissal with prejudice for not meeting the time limits in the rules, there has been no update to the Commentary, and it does not reflect the current status of the rules. For example, Rule 10–308 is now Rule 10–320 NMRA, and recent amendments to Rule 10–229 are not considered.

**Express Dismissal**

{42} The majority contends that inclusion of the language in Rule 10–229(D) setting out the method by which an extension may be granted for commencement of a dispositional hearing indicates that the Supreme Court meant to include a provision dismissing the case if the time limit for recommencement of a dispositional proceeding is not met. I disagree. The majority points to similar extension language in Rules 5–604, 10–226, and 10–320, all of which contain express dismissal provisions, and concludes that the Supreme Court meant to include express dismissal in Rule 10–229. Rules 5–604, 10–226, and 10–320 deal with adjudication and trial, not with disposition or sentencing. Time requirements for the commencement of the adjudicatory phase of a case are treated differently from time requirements for the dispositional phase. The content of Rule 10–117 is clear:

absent an express provision requiring dismissal, failure to comply with time limits in the Children's Court Rules is not a ground for dismissal of an action. We interpret rules in the same manner as we interpret statutes. *In re Michael L.,* 2002–NMCA–076, ¶ 9, 132 N.M. 479, 50 P.3d 574 (applying the same rules of construction to Supreme Court rules as to statutes). The legislature is also presumed to know its laws. *Bd. of Comm'rs of Doña Ana County v. Las Cruces Sun–News,* 2003–NMCA–102, ¶ 23, 134 N.M. 283, 76 P.3d 36 (stating that the court cannot say that the legislature " 'forgot' " to reassess a statute after amending another statute because the legislature is presumed to know the law). Similarly, the Supreme Court is presumed to know its rules; this supports the conclusion that the absence of an express provision for dismissal was intentional.

{43} The majority's reading results in inconsistent applications of sanctions. If a child is in detention and there has been no conduct that would act as a waiver, failure to begin the dispositional hearing results in release from detention. If, however, a child has been committed for diagnosis and the proceedings are not recommenced as provided by the rule, the majority view results in dismissal of the entire case, regardless of waiver, prejudice, or any other factor that might bear on late commencement of the proceedings. The purpose of diagnosis is to help the court fashion a disposition that is in the best interests of the child and the public. § 32A–2–17(D). It makes little sense to require an automatic dismissal of a case for late recommencement of dispositional proceedings yet require release from detention in the general case. *See Rivera,* 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (observing that statutes are not to be read literally if such reading results in an unreasonable application). The history of the development of the rule points in the opposite direction. Automatic dismissal for failure to begin a dispositional hearing, as occurred at the inception of these rules, is no longer the case.

{44} While my reading of the rule would not allow dismissal for mere failure to comply with the time limit in Rule 10–229(C), my

420

reading does not prevent a child from arguing for dismissal based on other grounds. For example, Rule 10–117 would allow dismissal when failure to meet the required deadline is inconsistent with substantial justice. There also may be cases wherein the facts would support a denial of due process or other constitutional violations. These alternative arguments were not made in this case.

{45} A child's right to a speedy dispositional hearing is similar to the general right to speedy sentencing. This court has acknowledged the difference between the right to a speedy trial and the right to speedy sentencing in children's court cases. In *Todisco*, we relied on *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir.1986), in stating that "a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration of a defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change[,] which must be taken into account...." *Todisco*, 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032 (quoting *Perez*, 793 F.2d at 254). We went on to say that "[m]ost of the interests designed to be protected by the speedy trial guarantee 'diminish or disappear altogether once there has been a conviction.'" *Todisco*, 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032 (quoting *Perez*, 793 F.2d at 256). This type of language supports the interpretation that dismissal is not an automatic sanction when the forty-five—day deadline for recommencement of dispositional proceedings is not met.

## CONCLUSION

{46} For the above reasons, I would not dismiss this case based on failure to comply with Rule 10–229(C).

{47} I therefore respectfully dissent.